IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLMETEX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| DENTAL RECYCLING NORTH AMERICA, | ) | **JURY TRIAL DEMANDED** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Solmetex, LLC ("Plaintiff" or "Solmetex") as and for its Complaint against Dental Recycling North America, Inc. ("Defendant" or "DRNA"), states and alleges as follows:

## THE PARTIES

1.     Solmetex is a limited liability company existing and organized under the laws of Delaware with its principal place of business at 4 Mount Royal Avenue, Suite 200, Marlborough, Massachusetts 01752.

2.     DRNA is corporation existing and organized under the laws of Delaware and has a place of business at 1270 Avenue of the Americas, Suite 1820, New York, New York 10020.

## NATURE AND BASIS OF ACTION

3.     This Action for damages and injunctive relief arises under the Patent Laws of the United States, Title 35 of the United States Code, the Lanham Act, Title 15 of the United States Code, and the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and 1367 because Solmetex seeks relief for DRNA's infringement of

Solmetex's patent, DRNA's false and misleading advertising under the Lanham Act, and relief for DRNA's violations under Delaware state law.

5.      This Court has personal jurisdiction over DRNA under the United States Constitution, the State Laws of Delaware, and/or the Federal Rules of Civil Procedure because DRNA is a Delaware corporation and because DRNA conducts, and has conducted, continuous, systematic, substantial, and routine business within Delaware, including, but not limited to, offering products and services for sale in Delaware.

6.      Venue in this Court is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because DRNA is a Delaware corporation.

## BACKGROUND

7.      Solmetex provides complete dental water safety solutions and offers a comprehensive range of proven products to assure clean, safe, and well-maintained water in dental offices. For example, Solmetex provides waste management services through a series of specialized processes and systems that cost-effectively remove mercury from dental office waste streams.

8.      Dental amalgam comprises a mixture of metals and is used to fill cavities in teeth. Approximately half of dental amalgam is elemental mercury, which is used to bind the other metals in the mixture to form the amalgam. When dentists remove old amalgam fillings from cavities or use a new amalgam in a filling, mercury from the waste amalgam enters the dental office's wastewater, which then may be discharged into the environment. According to the United States Environmental Protection Agency (EPA), dental amalgam wastewater (i.e., the dental amalgam effluent) from dental practices is the primary source of mercury discharges to publicly owned treatment works.

9. An amalgam separator is a mercury collection device that is connected to the vacuum pump in a dental office. The dental amalgam effluent from patients' mouths flows through the vacuum lines and passes through the amalgam separator where particles of teeth fragments, dental amalgam, and mercury are separated and collected. Solmetex has led the amalgam separation industry for over 25 years.

10. As of July 14, 2020, the EPA requires dental practices to install either an ISO 11143:2008 certified amalgam separator or a certified ANSI/ADA Standard No. 108 amalgam separator. Both standards require a separation rate of at least 95%.

11. Solmetex's NXT Hg5 Series® of Amalgam Separators ("the NXT Hg5 System") is the gold standard in amalgam separation and meets or exceeds all applicable state and federal regulations. The NXT Hg5 System separates particles of teeth fragments, dental amalgam, and mercury from the dental amalgam effluent and collects the solid waste particles in a collection container.

12. The NXT Hg5 System is available in three different sizes: the NXT Hg5, NXT Hg5 mini, and the NXT Hg5 High Volume:



13. The NXT Hg5 System generally comprises, among other things, an air water separator including an inlet from operatories that receives the dental amalgam effluent, an internal

manifold, and an outlet to the vacuum. A detachable collection container (hereinafter, "the NXT Hg5 Collection Container") is coupled to the system and filters the solid waste particles from the dental amalgam effluent. The NXT Hg5 Collection Container contains a unique and patented design that permits it be secured to the air water separator.



14.     The NXT Hg5 System is ISO11143 certified by NSF International, which is an independent global health and safety organization based in Ann Arbor, Michigan.

15.     The NXT Hg5 System has received numerous industry awards. (https://solmetex.com/endorsements/).

16.     Solmetex instructs NXT Hg5 System users to replace the NXT Hg5 Collection Container once the particle sediment reaches the full line on the NXT Hg5 Collection Container or once a year, whichever occurs first. Customers can purchase a replacement NXT Hg5 Collection Container from Solmetex's website at https://solmetex.com/product/collection-container/ or through authorized dealers.

17.    To install the NXT Hg5 Collection Container in the NXT Hg5 System, the user aligns and inserts the container, pushes it upwards, and then inserts two retaining pins on each side of the container to assist with retaining the container in position within the NXT Hg5 System:



18.    Solmetex also provides a recycling kit that allows the dentist office to safely secure the contents of the filled NXT Hg5 Collection Container and ship it to an approved facility for disposal and recycling:



19.    Solmetex's customers can enroll in the Solmetex Compliance Program, which allows customers to select their own auto-delivery schedule for, among other things, the NXT Hg5

Container. The Solmetex Compliance Program also offers an online Compliance Center portal from which consumers can access their Certificates of Recycling, Certificates of Installation, and Certificates of Warranty at any time.

## SOLMETEX'S '175 PATENT

20.     Solmetex's development of the innovative NXT Hg5 System has resulted in the issuance of several United States patents, including U.S. Patent No. 11,660,175 ("the '175 patent" or "the Solmetex Patent"). A true and correct copy of the '175 patent is attached hereto as Exhibit A.

21.     The '175 patent, titled "Detachable Recycling Container," was duly and legally issued by the United States Patent and Trademark Office on May 30, 2023.

22.     Solmetex is the owner of the entire right, title and interest in and to the '175 patent.

23.     Each of the independent claims of the '175 patent is directed to a detachable dental-amalgam container for use with a dental amalgam separation system.

24.     Solmetex's NXT Hg5 Collection Container practices one or more claims of the '175 patent.

## DRNA'S INFRINGING "GENERIC" CONTAINER FOR THE NXT HG5 SYSTEM

25.     DRNA makes, uses, sells, and/or offers to sell in the United States (including Delaware) amalgam separator collection containers, including the "DRNA Generic Amalgam Separator Cartridge 2" (the "Accused Instrumentality").

26.     DRNA advertises the Accused Instrumentality as a "generic cartridge" that is "compatible    with    the    Solmetex®    NXT    Hg5®    Amalgam    Separator." (https://drna.com/products/Cartridge-2-Compatible-with-Solmetex-r-NXT-Hg5-r-**-ONLY-p454946180). DRNA claims that its retail price of $285 represents "a 20% savings from the brand

name version."   The "brand name" that DRNA refers to here is the Solmetex Hg5 Collection Container.

27.      As shown below from DRNA's own marketing video, DRNA instructs users how to install the Accused Instrumentality in the Solmetex NXT Hg5 System using retaining pins that engage radially protruding structures on the top portion of the Accused Instrumentality:

 

([https://drna.com/products/Cartridge-2-Compatible-with-Solmetex-r-NXT-Hg5-r-**-ONLY-p454946180](https://drna.com/products/Cartridge-2-Compatible-with-Solmetex-r-NXT-Hg5-r-**-ONLY-p454946180))

28.      On information and belief, Solmetex and DRNA are the only entities that offer collection containers for the Solmetex NXT Hg5 System. Accordingly, each sale of an Accused Instrumentality by DRNA takes away a sale that would have otherwise been made by Solmetex.

**DRNA'S FALSE AND MISLEADING ADVERTISING**

29.      DRNA promotes the Accused Instrumentality by making false and misleading claims in its marketing materials and advertisements.   DRNA's false and misleading advertisements are promoted at least on DRNA's website, which is accessible by consumers nationwide, including in Delaware.

30.      On information and belief, DRNA is making false and misleading claims about the Accused Instrumentality in an effort to legitimize its "generic" version of Solmetex's NXT Hg5 Collection Container with inaccurate comparisons to Solmetex's proven technology in order to divert sales from Solmetex to DRNA.

{01911923;v1 }                                    7

31.     The "Frequently Asked Questions" or "FAQ" section of DRNA's website contains multiple false and misleading statements regarding the Accused Instrumentality. (https://drna.com/faq/). This section of DRNA's website repeatedly compares the Accused Instrumentality to "the name brand," "big brand name," and "big name brands." These references refer to Solmetex.  Indeed, the section titled "Do your Generic Amalgam Separator Cartridges really work with my Solmetex®** unit?" and its corresponding description specifically refer to Solmetex and Solmetex's NXT Hg5 Collection Container.

**DRNA's False and Misleading Statements Regarding Performance**

32.     Under the FAQ heading titled "Why should I use your products over the name brand?" on DRNA's website, DRNA states "By opting for DRNA's products, you will access cost-effective solutions that support compliance and perform as well as the more costly, big name brands." (https://drna.com/faq/). This claim is literally false. The Accused Instrumentality does not "perform as well as" Solmetex's NXT Hg5 Collection Container in several respects.

33.     For example, the inlet and outlet ports on the Solmetex's NXT Hg5 Collection Container are specifically constructed with differing heights to aid in providing a seal. By contrast, in the DRNA Accused Instrumentality, the inlet and outlet ports have the same height, leading to leaks due to insufficient sealing.

34.     On information and belief, DRNA has received complaints from its customers that they experienced leaking from the NXT Hg5 System when used with the Accused Instrumentality.

35.     As another example, the flow characteristics of the Accused Instrumentality make it more prone to clogging than Solmetex's NXT Hg5 Collection Container. The Accused Instrumentality does not permit viscous fluids to exit the container as well as the NXT Hg5 Collection Container, which causes the Accused Instrumentality to fill up, makes it more prone to

clogging than Solmetex's NXT Hg5 Collection Container, and causes dental amalgam effluent to backup into the system.

36.     Customers of the Solmetex NXT Hg5 System have complained to Solmetex about their system backing up. Upon investigation by Solmetex, it was determined that these customers were using DRNA's Accused Instrumentality instead of the NXT Hg5 Collection Container.

37.     On information and belief, DRNA has received the same or similar complaints from customers, indicating that the NXT Hg5 System has backed up when using the Accused Instrumentality.

38.     For at least these reasons, DRNA's claims that the Accused Instrumentality "perform[s] as well as" the Solmetex NXT Hg5 Collection Container are literally false.

39.     On information and belief, DRNA customers have informed DRNA that the Accused Instrumentality does not, in fact, perform as well as Solmetex's NXT Hg5 Collection Container. Accordingly, on information and belief, DRNA knows or should know that its claim that the Accused Instrumentality "perform[s] as well as" Solmetex's patented NXT Hg5 Container is literally false.

**DRNA's False and Misleading Statements on Testing, Certification, and Regulations**

40.     The EPA's regulations require "[i]nstallation, operation, and maintenance of one or more amalgam separators that meet the following requirements," among others:

> (i)     Compliant with either the American National Standards Institute (ANSI) American National Standard/American Dental Association (ADA) Specification 108 for Amalgam Separators (2009) with Technical Addendum (2011) or the International Organization for Standardization (ISO) 11143 Standard (2008) or subsequent versions so long as that version requires amalgam separators to achieve at least a 95% removal efficiency. Compliance must be assessed by an accredited testing laboratory under ANSI's accreditation program for product certification or a testing laboratory that is a signatory to the International Laboratory Accreditation

Cooperation's Mutual Recognition Arrangement. The testing laboratory's scope of accreditation must include ANSI/ADA 108-2009 or ISO 11143.

40 C.F.R. § 441.30(a)(1)).

41.     The EPA's regulations require that compliance with the ISO 11143:2008 standard "be assessed by an accredited testing laboratory under ANSI's accreditation program for product certification or a testing laboratory that is a signatory to the International Laboratory Accreditation Cooperation's Mutual Recognition Arrangement. The testing laboratory's scope of accreditation must include ANSI/ADA 108-2009 or ISO 11143." 40 C.F.R. § 441.30(a)(1)).

42.     In the product details section of DRNA's website, DRNA claims that the Accused Instrumentality has been "[s]uccessfully tested to ISO 11143:2008 standard." (https://drna.com/products/Cartridge-2-Compatible-with-Solmetex-r-NXT-Hg5-r-**-ONLY-p454946180). The FAQ section of DRNA's website also claims that the Accused Instrumentality is "tested to ISO 11143:2008 standard." (https://drna.com/faq/). These claims are false or at least misleading for multiple reasons.

43.     First, these claims suggest to consumers that the Accused Instrumentality complies with all requirements of the ISO 11143:2008 standard. That is literally false because the Accused Instrumentality does not, in fact, comply with the requirements of the ISO 11143:2008 standard. For example, Section 12.4 of the ISO 11143:2008 standard provides that "[t]he removable collecting container shall be marked with at least the following information: . . . b) model reference of the corresponding amalgam separator." The Accused Instrumentality is not marked with a model reference of the corresponding amalgam separator (i.e., the NXT Hg5 System) and does not comply with the ISO 11143:2008 standard for at least this reason.

44.     Second, on information and belief, to the extent the Accused Instrumentality was actually "tested to ISO 11143:2008 standard," the Accused Instrumentality's compliance with the

ISO 11143:2008 was not assessed by an accredited testing laboratory under ANSI's accreditation program for product certification or a testing laboratory that is a signatory to the International Laboratory Accreditation Cooperation's Mutual Recognition Arrangement.

45.     NSF International ("NSF") is an accredited testing laboratory that can certify compliance with the ISO 11143:2008 standard as required by the EPA regulation. NSF requires that certified products bear the "NSF" mark or be otherwise represented as certified.

46.     Solmetex's NXT Hg5 System is ISO11143 certified by NSF and bears the "NSF" mark:



47.     Solmetex's NSF certification was based on the NXT Hg5 Collection Container, not third-party collection containers (e.g., the Accused Instrumentality). Thus, the NXT Hg5 System operations manual provides that use of third-party collection containers, such as the Accused Instrumentality, will void the warranties on the NXT Hg5 System.

48.     In addition to the Accused Instrumentality, DRNA has also marketed and sold a "generic" collection container for Solmetex's prior Hg5 Legacy system ("the legacy collection

container").          ([https://drna.com/products/Cartridge-1-Compatible-with-Solmetex-r-Hg5-r-](https://drna.com/products/Cartridge-1-Compatible-with-Solmetex-r-Hg5-r-Legacy**-ONLY-p379300903)
[Legacy**-ONLY-p379300903](https://drna.com/products/Cartridge-1-Compatible-with-Solmetex-r-Hg5-r-Legacy**-ONLY-p379300903)). DRNA has marked its legacy collection container with the "NSF"

mark in the past. However, DRNA does not mark the Accused Instrumentality with the "NSF"

mark.  DRNA's legacy collection container is shown below on the left with the "NSF" mark, while

DRNA's Accused Instrumentality is shown on the right below with no "NSF" mark:



49.     DRNA's website does not specifically represent that the Accused Instrumentality

is ISO11143 "certified" or that it has a "certification" under ISO11143.

50.     On information and belief, the Accused Instrumentality is not ISO11143 certified

by NSF through testing at NSF's testing facility.

51.     On information and belief, the Accused Instrumentality is not ISO11143 certified

via any accredited testing laboratory as defined in the applicable EPA regulation. 40 C.F.R. §

441.30(a)(1)(i).

52.     For at least these reasons, the claims on DRNA's website are at least misleading in

that they suggest to consumers that the Accused Instrumentality has been "certified" to the ISO

11143:2008 standard when, on information and belief, the Accused Instrumentality has not actually been certified to the ISO 11143:2008 standard.

53.     Under the FAQ heading titled "Do your Generic Amalgam Separator Cartridges really work with my Solmetex ®** unit?," DRNA states "Absolutely! DRNA's amalgam separators satisfy all local, state, and federal regulations for amalgam disposal and recycling. . . . you can replace your Solmetex® NXT** Amalgam Separator Cartridge with our generic cartridge." (https://drna.com/faq/). This claim is false and misleading. To the extent the phrase "DRNA's amalgam separators" refers to the Accused Instrumentality, this claim is literally false at least because, on information and belief, the Accused Instrumentality has not been tested in accordance with the applicable EPA regulation, as discussed above. This claim is also literally false because the Accused Instrumentality does not comply with one or more aspects of the ISO 11143:2008 standard (e.g., Section 12.4), as discussed above. To the extent the phrase "DRNA's amalgam separators" is meant to refer to DRNA's own amalgam separator products (https://drna.com/products/Amalgam-Separators-c130498522) and not the Accused Instrumentality, this claim is misleading because it suggests to consumers that the Accused Instrumentality satisfies "all local, state, and federal regulations for amalgam disposal and recycling" when it does not.

54.     The EPA's regulations provide that "[i]n the event that an amalgam separator is not functioning properly, the amalgam separator must be repaired consistent with the manufacturer instructions or replaced." 40 C.F.R. § 441.30(a)(1)(v).

55.     The NXT Hg5 System operating manual provides instructions informing users that, if there are some solids in the air-water separator, the user should turn on the vacuum, remove the retaining pins, and tilt the container towards the outlet pipe to allow air into the top chamber. The

differing heights of the inlet and outlet ports on the NXT Hg5 Collection Container allow for this tilting or "burping" to clear clogs that prevent proper functioning of the NXT Hg5 System.

**Q: Top chamber has some solids:**
A:  System is backed up.
  • Turn on vacuum
  • Remove pins
  • Tilt container towards outlet pipe to allow air into top chamber
  • Place container back on and insert pins

Ex. B at p. 6

56.     Because DRNA's Accused Instrumentality has inlet and outlet ports with the same height, the user cannot provide or cause the tilting called for in the NXT Hg5 System operating manual to clear system backups in the same way as the NXT Hg5 Collection Container. Instead, on information and belief, users of the Accused Instrumentality must at least partially remove the Accused Instrumentality from the NXT Hg5 System, leading to leaks and spillage of the potentially hazardous dental amalgam effluent.

57.     Thus, the Accused Instrumentality cannot be restored to the proper function in a manner consistent with Solmetex's instruction manual, which call for "tilt[ing] container towards outlet pipe to allow air into top chamber."  Because the Accused Instrumentality cannot be restored to proper function by following the manufacturer's instructions as required in 40 C.F.R. § 441.30(a)(1)(v), the Accused Instrumentality does not "satisfy all local, state, and federal regulations for amalgam disposal and recycling" as claimed on DRNA's website.

**DRNA's False and Misleading Statements on "Compatibility" with the NXT Hg5 System**

58.     The product description on DRNA's website claims that the Accused Instrumentality is "Compatible with Solmetex NXT Hg5." (https://drna.com/products/Cartridge-2-Compatible-with-Solmetex-r-NXT-Hg5-r-**-ONLY-p454946180). The blog section of DRNA's website also states that "DRNA's Generic Amalgam Separator Cartridge 2 is easy to install,

compatible with your existing system, and cost-effective." (https://drna.com/spotlight-on-drnas-generic-cartridge-2-watch-and-learn-how-to-swap-and-save/).

59.     These claims of compatibility with the NXT Hg5 System are false and misleading for several reasons. First, the Accused Instrumentality is not compatible with the NXT Hg5 System because when the NXT Hg5 System is used in combination with the Accused Instrumentality because, as discussed above, it is not ISO 11143 certified and would not comply with all applicable federal, state, and/or local regulations. Second, the Accused Instrumentality is not compatible with the NXT Hg5 System because, as discussed above, DRNA's Accused Instrumentality is much more susceptible to leaking and clogging than when NXT Hg5 System is used with the genuine Solmetex NXT Hg5 Collection Container.

## COUNT I
### (INFRINGEMENT OF THE '175 PATENT)

60.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

61.     The claims of the '175 patent are valid and enforceable.

62.     DRNA, without authority or license from Solmetex, has made, used, offered to sell, sold, and/or imported into the United States the Accused Instrumentality.

63.     DRNA has directly infringed and continues to directly infringe one or more claims of the '175 patent, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States and imported into the United States, without permission or license from Solmetex, the Accused Instrumentality that embodies or practices the inventions disclosed and claimed in the '175 patent in violation of 35 U.S.C. § 271(a).

64.     DRNA has been and is indirectly infringing the '175 patent by actively inducing or contributing to the direct infringement by others of the '175 patent, in the United States and this District.

65.     DRNA actively induces direct infringement by others of one or more claims of the '175 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b). For example, DRNA induces infringement of one or more claims of the '175 patent, for example, when end users install the Accused Instrumentality in an NXT Hg5 System in its intended manner.

66.     The affirmative acts of inducement by DRNA include, but are not limited to, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused Instrumentality and its components; and creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information relating to the Accused Instrumentality.

67.     DRNA is highly aware of Solmetex's patented NXT Hg5 System. As discussed above, DRNA specifically markets the Accused Instrumentality as being compatible with the NXT Hg5 System. The NXT Hg5 Collection Container is conspicuously marked with several Solmetex patent numbers, including U.S. Patent Nos. 10,646,313 ("the '313 patent"), D840,534 ("the '534 design patent"), and D848,612 ("the '612 design patent"). On information and belief, DRNA has obtained one or more NXT Hg5 Collection Containers and, therefore, had notice and knowledge of U.S. Patent Nos. 10,646,313, D840,534, and D848,612 as early as 2020.

68.     On or around September 22, 2020, counsel for Solmetex provided DRNA with notice of Solmetex's U.S. Patent No. 10,779,923 ("the '923 patent").

69.     The '175 patent is related to the '923 patent, which DRNA has had knowledge of as early as September 2020. The '175 patent is also related to the '313 patent, which on information

and belief, DRNA has had knowledge of. Accordingly, on information and belief, DRNA has knowledge of and monitors Solmetex's patent portfolio relating to the NXT Hg5 System and its Collection Container, including knowledge of the patent application leading to the '175 patent, which published on February 9, 2023.

70.     At a minimum, pursuant to 35 U.S.C. § 287(a), the filing of this Complaint constitutes notice to DRNA of the '175 patent and of DRNA's infringement thereof.   On information and belief, at least as of the filing of the Complaint, DRNA knows or should know that its activities induce others to directly infringe one or more claims of the '175 patent.

71.     At least as of the filing of the Complaint, DRNA has and continues to specifically intend and be aware of the fact that the ordinary and customary use of the Accused Instrumentality would infringe the '175 patent.

72.     At least as of the filing of the Complaint, DRNA knows that the induced conduct would constitute infringement, and intends said infringement at the time of committing the aforementioned acts, such that those acts and conduct have been and continue to be committed with the specific intent to induce infringement, or to deliberately avoid learning of the infringing circumstances at the time those acts were committed, so as to be willfully blind to the infringement they induced.

73.     DRNA has and continues to take active steps to encourage end users to use and operate the Accused Instrumentality, despite knowing, at least as of the filing of the Complaint, of the '175 patent in the United States, in a manner it knew directly infringes one or more claims of the '175 patent. Further, DRNA provided marketing materials and other technical information that cause its subscribers, customers, and other third parties to use and to operate the Accused Instrumentality for its ordinary and customary use, such that DRNA's customers and other third

parties have directly infringed the '175 patent, through the normal and customary use of the Accused Instrumentality.

74.     Solmetex is entitled to recover damages as a result of DRNA's infringement of the '175 patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

75.     On information and belief, DRNA will continue its infringement of one or more claims of the '175 patent unless enjoined by the Court. Solmetex has been irreparably harmed by DRNA's infringement and will be continue to be harmed unless and until the issuance of a permanent injunction against DRNA.

## COUNT II
### (VIOLATION OF SECTION 43(A) OF THE LANHAM ACT; 15 U.S.C. § 1125(A))

76.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

77.     DRNA's false and misleading statements constitute false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78.     DRNA has made false, misleading and unsubstantiated statements of fact about its products in its advertisements and marketing materials, as described herein, with the intent to mislead and deceive consumers.

79.     On informaiton and belief, DRNA's false and misleading statements of fact have and are continuing to actually deceive or tend to deceive a substantial number of relevant and intended consumers into purchasing DRNA's Accused Instrumentality instead of Solmetex's products by misleading consumers into wrongly believing that DRNA's Accused Instrumentality

performs as well as Solmetex's product. On information and belief, DRNA's false and misleading statements of fact have influenced the buying decisions of consumers throughout the United States.

80.    DRNA's marketing and sales of the Accused Instrumentality is causing harm to Solmetex in that customers are attributing performance problems to Solmetex's NXT Hg5 System when, in fact, the problems are caused by DRNA's Accused Instrumentality.  Because customers improperly attribute these problems to Solmetex, Solmetex has experienced a loss of goodwill and injury to its business reputation.

81.    DRNA's false and misleading statements of fact were and are made in interstate commerce.

82.    On information belief, DRNA will continue to make these false and misleading claims and Solmetex will continue to suffer a loss of consumer confidence, sales, profits, and goodwill, which will irreparably harm Solmetex, unless this Court enjoins DRNA from continuing such false and misleading claims and orders their retraction and/or correction.

83.    On information and belief, DRNA has profited from its unlawful actions and has been unjustly enriched to the detriment of Solmetex. DRNA's unlawful actions have caused Solmetex monetary damage in an amount to be determined at trial.

<u>**COUNT III**</u>
**(VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT; DEL. CODE ANN. TIT. 6 § ET. SEQ.)**

79.    Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

80.    DRNA's advertising and promotional materials, as described herein, contain literally false and misleading statements regarding the nature, characteristics, benefits, uses, or qualities of goods in commerce.

81.     DRNA's advertising and promotional materials, as described herein, create a likelihood of confusion, deception, and misunderstanding because DRNA's claims lead consumers to wrongly believe, for example, that the DRNA Accused Instrumentality "performs as well as" Solmetex's patented NXT Hg5 Collection Container.

82.     These literally false and misleading advertising and promotional statements are material to consumer purchasing decisions and, in addition to creating a likelihood of consumer confusion, are, on information and belief, have caused and are continuing to cause actual consumer confusion and damages to Solmetex.

83.     On information belief, DRNA will continue to make these false and misleading claims and Solmetex will continue to suffer a loss of consumer confidence, sales, profits, and goodwill, which will irreparably harm Solmetex, unless this Court enjoins DRNA from continuing such false and misleading claims and orders their retraction and/or correction.

## PRAYER FOR RELIEF

WHEREFORE, Solmetex prays for judgment and seeks the following relief:

a.     For judgment that DRNA has infringed and continues to infringe one or more claims of the '175 patent, directly, and indirectly by both inducement of infringement and contributory infringement, in violation of the United States Code, including, without limitation, 35 U.S.C. § 271;

b.     For an order enjoining DRNA, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from infringing the '175 patent;

c.     For judgment awarding Solmetex damages adequate to compensate Solmetex for DRNA's past infringement, and any continuing or future infringement through the date such

judgment is entered, including prejudgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

      d.      For judgment that DRNA willfully infringed the '175 patent;

      e.      For judgment awarding enhanced damages to Solmetex in this case pursuant to 35 U.S.C. § 284;

      f.      For an order enjoining DRNA, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from engaging in any false or misleading advertising with respect to DRNA's Accused Instrumentality, Solmetex's products and services, and any related goods or services in any manner whatsoever;

      g.      For an order requiring DRNA to deliver up, or cause to be delivered up, for destruction of all advertisements, marketing material, and all other materials in the possession or control of DRNA that contain any false or misleading statements of fact about its Accused Instrumentality and any related goods or services and Solmetex's products and services;

      h.      For an order requiring DRNA to perform corrective advertising to correct the false and misleading statements about its Accused Instrumentality and Solmetex's products and services;

      i.      For judgment awarding Solmetex the amount of Solmetex's damages pursuant to 15 U.S.C. § 1117 and Delaware law;

      j.      For judgment requiring DRNA to account for and pay to Solmetex the amount of DRNA's profits pursuant to 15 U.S.C. § 1117 and Delaware law;

      k.      For judgment requiring DRNA to account for and pay to Solmetex the amount of damage caused by the loss of goodwill and business reputation;

l.      For judgment awarding enhanced damages to Solmetex in this case pursuant to 15 U.S.C. § 1117 and Delaware law;

m.      For judgment that this case to be deemed an "exceptional case" under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117, and an award to Solmetex for its attorneys' fees and costs incurred in bringing and prosecuting this action; and

n.      For judgment awarding Solmetex such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Solmetex demands trial of its claims for relief herein before a jury.


ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

*Of Counsel:*

Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Daniel J. Burnham                         Wilmington, DE 19899
Angelo J. Christopher                     (302) 654-1888
NIXON PEABODY LLP                         amayo@ashbygeddes.com
70 West Madison Street, Suite 5200
Chicago, IL 60602-4378                    *Attorneys for Plaintiff*
(312) 977-4400

Dated:  June 1, 2023